48 CCPA

**MINNESOTA MINING AND MANUFACTURING COMPANY, Appellant,**

v.

**CROWN 400 CORPORATION, Appellee.**

**Patent Appeal No. 6691.**

United States Court of Customs and Patent Appeals.
June 2, 1961.
Rehearing Denied July 13, 1961.

Smith and Kirkpatrick, Judges, dissented.

Mark W. Gehan, Charles H. Lauder, Carpenter, Abbott, Coulter & Kinney, St. Paul, Minn., for appellant.

Martin J. Brown, Adams, Forward & McLean, Robert B. Harmon, Washington, D. C. (Malcolm S. Bradway, Chicago, Ill., of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

WORLEY, Chief Judge.

The sole issue here is whether there is likelihood of purchaser confusion within the meaning of Section 2(d) of the Lanham Act, 15 U.S.C.A. § 1052(d)

between the marks of the parties when applied to their respective goods. The trademark Trial and Appeal Board held in the negative and dismissed an opposition by appellant, Minnesota Mining and Manufacturing Company, to an application by appellee, Crown 400 Corporation, for registration of "Scotty" for use on:

"Mops for Polishing, Dusting, Washing and Scrubbing Floors, Walls, Ceilings, Woodwork and Furniture."

First use on September 18, 1957, is alleged.

The opposition is based on opposer's prior use and registration of a number of trademarks consisting of or comprising "Scotch," and marks connoting "Scotch" for a variety of products. Specific registrations pertinent here are "Scotch" for pressure sensitive adhesive tape,[1] and for coated abrasives,[2] and "Scotch Boy" polish for varnished, painted, lacquered, and enameled surfaces.[3] Opposer also alleges, and applicant does not dispute, that prior to applicant's alleged date of first use opposer extended usage of its "Scotch" trademark to household dusting fabric. The record further shows opposer's use of "Scotch-Tred" for decorative non-slip floor covering material and "Scotch-Brite" for abrasive scouring pads.[4] Additionally, opposer uses a cartoon character representing a small boy dressed in Scottish apparel in connection with the goods sold under its "Scotch" trademarks and specifically refers to the boy as "Scotty McTape" when the mark is used in association with the display of its pressure sensitive adhesive tape products.

The majority of the board held that, in view of the differences in the respective marks of the parties and the differences in the goods to which they are

---

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28, United States Code.

1. Reg. No. 417,265 issued October 16, 1945.

2. Reg. No. 577,689 issued July 21, 1953.

3. Reg. No. 418,129 issued December 4, 1945.

4. The board's decision listed both "Scotch-Tred" and "Scotch-Brite" as registered trademarks, although neither certificate of registration appears in the record here.

applied, confusion of purchasers was not likely to occur.[5]

Opposer principally contends that, in view of its "Scotch" brand marks for various household goods, purchasers seeing applicant's "Scotty" mark on mops would think they had a common origin.

Applicant, in support of its position, contends that opposer has no monopoly in a Scotch theme or connotation *per se;* that opposer does not use the term "Scotty" as a trademark for *any* of its goods; and that the goods upon which it does apply its "Scotch" brand marks are not of the same descriptive properties as sponge mops. Moreover, applicant urges that the goods of opposer which are most closely related to mops are sold under marks radically different from "Scotty."

While we appreciate applicant's arguments, together with the authorities cited in support thereof, we are not convinced that there is no likelihood of confusion as to source or origin between the household dusting fabric bearing the "Scotch" brand mark, and applicant's "Scotty" mops for polishing, *dusting,* washing and scrubbing floors.

Under the facts here we find it difficult to disagree with the following views from the dissenting opinion below:

> "Although mops and dusting cloths are specifically different, they are nevertheless products which might readily be assumed to originate with a single producer or seller if sold under the same or similar marks. And it is my opinion, that the mark opposer uses on its dusting cloths 'Scotch' and applicant's mark 'Scotty' create substantially similar commercial impressions so that there would be a reasonable likelihood of purchaser confusion."

 At the very least the matter is doubtful and we feel obliged to resolve the doubt in favor of the first user. The United States Time Corp. v. Tennenbaum, 267 F.2d 327, 46 C.C.P.A. 895.

The decision appealed from is reversed.

Reversed.

SMITH, Judge, with whom KIRKPATRICK, Judge, joins (dissenting).

The words "Scotch" and "Scotty" are common and well-understood English words which are so distinct in appearance, sound and meaning that we do not think confusion, mistake or deception of purchasers would be likely when the marks are used on the respective goods of the parties. We would, therefore, affirm the decision of the Trademark Trial and Appeal Board.

---

5. In addition, the board noted that although applicant alleged use of its "Scotty" mark since September 18, 1957, it had been affirmatively shown by the testimony of applicant's president that it had never made any sales under that mark. The board recommended that should applicant prevail on the inter partes issue its application should be re-examined in light of its non-use of the mark.